REMIGIO REYES - JUAREZ  \*
Petitioner,  \*
\*
\*
vs.  \*   C.A. No.
\*   ( CR. No.          )
\*
UNITED STATES OF AMERICA  \*   B-99-434
Respondent.  \*   B-01-050

United States District Court
Southern District of Texas
FILED

JAN 07 2002

Michael N. Milby
Clerk of Court

## MOTION TO DISMISS INDICTMENT AND VACATE SENTENCE

TO THE HONORABLE COURT:

Comes now, the defendant, Remigio Reyes-Juarez, ~~[struck out]~~ and moves this Honorable Court and respectfully submits this his Motion To Dismiss Indictment and Vacate Sentence pursuant to Title 8 U.S.C. Section 1326(d)(1)(2)(3). In support thereof, Defendant respectfully shows the following.

### JURISDICTION

Jurisdiction is invoked under Title 8 U.S.C.A. Section 1326(d), Titled: Limitation on collateral attack on underlying deportation order, which stipulates in pertinent part: In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that — (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the or

was fundamentally unfair. In addition jurisdiction is invoked pursuant to the Fifth Amendment. Persons within the territory of the United States ... and ... even aliens ... [may not] ... be deprived of life, liberty or property without due process of law. <u>Wong Wing v. United States</u>, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896). Procedural due process is available to aliens in some circumstances. <u>Landon v. Plasencia</u>, 459 U.S. 21, 32-33, 103 S.Ct. 321, 74 L.Ed. 2d 21 (1982) ("a continuously present resident alien is entitled to a fair hearing when threatened with deportation ... [and] has a right to due process" before being required to leave the country").

## STATEMENT OF PROCEDURAL FACTS

Mr. Remigio Reyes-Juarez's ("Reyes-Juarez") one and only deportation occurred in 1998, and was performed by an immigration agent who denied Reyes-Juarez with the basic due process requirements of a deportation hearing. ~~On or about 1988, Reyes-Juarez was granted Permanent Resident status~~ An alien admitted to the United States for permanent residence is deemed citizen of the state in which the alien is domiciled. Title 28 U.S.C.A. Sec 1332(a). One view is that the clear language of the statute, establish that when an alien receives permanent residence status the alien is not an alien for diversity purposes, but is instead a citizen of the state in which he or she resides. Mr. Reyes-Juarez was subsequently on October 1999, convicted and sentenced to 57 months for illegal reentry following deportation. On September 20, 2001, Reyes-Juarez was recalled the District Court for the Southern District of Texas, Brownsville Division, a <u>WRIT OF HABEAS CORPUS</u>.

# MOTION TO DISMISS FOR UNCONSTITUTIONAL PRIOR DEPORTATION

## A. Introduction

Mr. Reyes-Juarez was convicted for illegal reentry following a prior deportation, under Title 8 U.S.C. Section 1326. By this Motion, Reyes-Juarez request's that the Court dismiss the Indictment and vacate the present sentence on the basis that the prior deportation is unconstitutional for purposes of a Section 1326 prosecution. Mr. Reyes-Juarez's prior deportation, which the government used as a basis for the instant prosecution, was constitutionally defective. i.e; If a deportation hearing had been conducted before an Immigration Judge, Petitioner would have made a prima facia showing that he was eligible for Section 212(c) relief from deportation, and he could have made a strong showing in support of his application, of said relief. The First Circuit's recognition that the ability to apply for, if not receive, Section 212(c) relief was a valuable, substantive right, his allows Reyes-Juarez to claim substantial prejudice, for the fact that he was not allowed to contest his deportation. See, Anwar v. I.N.S., 116 F.3d 140, at 144 (5th Cir. 1997); See also, Wallace v. Reno, 24 F. Supp. 2d 104, Footnote 7. at 108 (D. Mass. 1998).

In 1987, the United States Supreme Court ruled that any defendant charged under a Section 1326 violation, has the right to mount a collateral attack on the lawfulness of a prior deportation order (as was Reyes-Juarez's insistance, that Court

page 2(a) of 7

Appointed Attorney Sandra Zamora-Zayas argue and litigate the unlawfulness of the prior deportation issue), before such order may be used to prove the deportation element of a Section 1326 charge. United States v. Mendoza-Lopez 481 U.S. 828 (1987).

## B. Factual Background

On or about January or February of 1994, Petitioner Reyes-Juarez a lawful Permanent Resident pleaded guilty to a criminal charge that made him deportable (Removable, as it is now called). In the United States Supreme Court's 2000-01 term, the majority concluded that "Section 212(c) remain available for aliens, like Reyes-Juarez whose conviction was obtained through a plea agreement and who, notwithstanding those convictions, would have been eligible for Section 212(c) relief at the time of their plea under the law then in effect."

According to the discovery by the government, Reyes-Juarez was Removed from the United States to Mexico in 1998. This expulsion from the United States which triggered the present Section 1326 conviction, did not result from a deportation hearing held before an immigration judge. Rather, in the case at hand the Immigration and Naturalization Service ("I.N.S."), took advantage of a novel procedure whereby the I.N.S. by-passed the immigration court altogether and summarily Removed Reyes-Juarez without any sort of hearing before an immigration judge, and thus, not allowing Reyes-Juarez an opportunity to

contest his Permanent Residence Card from becoming Null and Void.

C. Argument

The procedure employed to effect Mr. Reyes-Juarez's deportation does not meet the constitutional requirements of due process. It is clearly established that the Fifth Amendment of the United States Constitution entitles aliens to due process of law in deportation proceedings. Animashaun v. I.N.S., 990 F.2d 234, 238 (5th Cir. 1993) (citing Reno v. Flores, 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed. 2d 1 (1993)). [text struck through and illegible]

~~[scribbled out text]~~ The fact that the I.N.S. acted as police officer, prosecutor, judge, jury and hangman all rolled into one is deplorable, and does not comport with even the most basic standards of due process and fundamental fairness. Thus, the deportation which resulted cannot be used as proof of the present Section 1326 offense.

This challenge is brought to the Court under the authority of United States v. Mendosa-Lopez, 481 U.S. 828 (1987). There, the Supreme Court stated that it was "troubled" by the notion that the government could use the results of administrative proceedings to establish an element of a criminal offense. The Court went on to hold that such boot-strapping would only comport with due process of law if the alien was afforded the opportunity, in the context of the later criminal prosecution, to challenge procedural deficiencies that may have occurred in the earlier deportation. The Court observed that "if the statute (Section 1326) envisions that a court may impose penalties for any reentry, regardless of how violative of the rights of the alien the deportation proceeding may have been, such a statute does not comport with the constitutional requirements of due process". Id. at 837. Thus, under Mendosa-Lopez if an immigration procedure, regulation, or policy falls below the due process requirements of the United States Constitution, the deportation which results may not be used as evidence against the accused in a subsequent criminal prosecution for illegal reentry.

Mr. Reyes-Juarez contends that the nature of the proceedings by which he was deported were fundamentally unfair. The I.N.S. is charged with arresting persons who are present in the United States without permission. To permit this same agency, whose goal and mission is to remove foreign nationals from the United States against their will, to sit in judgment on the merits of its own accusations, does not comport with any known description of the adversarial system, or with any definition of due process and fundamental fairness. Perhaps most critically, the procedure employed thwarts due process by omitting any participation by a neutral, third party-arbiter. Thus, no one other than the I.N.S. itself, the prosecuting entity, provides the alien an explanation of his/her rights. And no one, other than the I.N.S., ever evaluates whether the waiver of such rights is knowing, intelligent, and/or voluntary.

An examination of this case in comparison with Mendoza-Lopez points out how fundamentally unfair Mr. Reyes-Juarez's deportation proceeding was. The complained-of error in Mendoza-Lopez which was the subject of the collateral attack was that the immigration judge who presided over the hearing had inadequately informed Mr. Mendoza-Lopez of his right to appeal the adverse deportation order. When viewed in the light of the procedure which Mr. Reyes-Juarez challenges, that error seems paltry. Mr. Reyes-Juarez was stripped of even the minimal protection that was afforded to the appellant in Mendoza-Lopez - no immigration judge adjudicated this case at all, there is no transcript or audio-tape to review, and indeed there was no hearing at all. Prior to 1996, an alien who was determined to be deportable could

Page 5 of 7

/

apply to the Attorney General for a waiver of deportation under Section 212(c) of the Immigration and Nationality Act of 1952, Title 8 U.S.C.A. Section 1182(c), and more than half of the aliens who applied for such discretionary relief were granted waivers. The "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." Landgraf v. U.S.I. Film Products, 511 U.S. 244, at 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)(quoting Kaiser Aluminum and Chemical Corp. v. Bonjorno, 499 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)). In the years immediately preceding the enactment of Antiterrorism and Effective Death Penalty Act, immigration judges and the Board of Immigration Appeals granted over half of the Section 212(c) applications they decided. See Mojica v. Reno, 970 F.Supp. 177, at 178, (EDNY 1997) "Moreover, when applications were denied, review was available in the courts of appeals, which vacated those denials "on a nontrivial number of occasions." Reyes-Hernandez, 89 F.3d 490, at 492 (7th Cir. 1996).

Mr. Reyes-Juarez contends that the scheme whereby he was deported is an "analogous abuse" to those which have previously been held fundamentally unfair by the Supreme Court. He was arrested, charged, prosecuted, adjudged "guilty" and deported by the same agency, without the involvement of an impartial immigration judge at any stage of the proceedings. This is not due process, and under Mendoza-Lopez the resulting deportation should not be validated by this Court in the context of the present criminal prosecution.

D. Conclusion

The procedure employed by the I.N.S. to deport Mr. Reyes-Juarez was fundamentally unfair. Accordingly, the use of the results of that procedure now, to prove an element of the Section 1326 charge against Mr. Reyes-Juarez, would violate his due process rights and cannot be reconciled with the holding of the United States Supreme Court in United States v. Mendoza-Lopez, 481 U.S. 828 (1987). Thus, Mr. Reyes-Juarez requests that this Court order the indictment dismissed, and vacate the present sentence.

Respectfully submitted,

*Remigio Reyes Juarez*
Remegio Reyes-Juarez
Petitioner
U.S.M. No. 92045-079

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of ~~December~~ JANUARY, 2001, a copy of the foregoing Motion to Dismiss Indictment of Petitioner Remigio Reyes-Juarez, was hand-delivered to ~~[redacted]~~ ~~at Attorney/Inmate conference room located at Detention Center-1, located at: 1145 E. Harrison St., Brownsville, Texas, 78520.~~ the U.S. Attorney's Office at 600 E. Harrison St., Brownsville, TX 78520

*Remigio Reyes-Juarez*